THOMAS ZADIE HARPER, Appellant, v. ST. JOSEPH LEAD COMPANY, a Corporation, BYRON BALL and L. B. SMITH, Respondents, No. 41921—233 S. W. (2d) 835.

Division Two, November 13, 1950.

130

*J. O. Swink* for appellant.

*W. Oliver Rasch, John S. Marsalek* and *Moser, Marsalek, Carpenter, Cleary & Carter* for respondents.

134

[836]  BOHLING, C.—Thomas Z. Harper, plaintiff, instituted this action against the St. Joseph Lead Company, a corporation, Byron Ball, and L. B. Smith, defendants. Plaintiff's petition was in two counts. The first count sought $22,500 actual and $22,500 punitive damages for alleged malicious prosecution. The second count sought $1,000 actual and $4,000 punitive damages for an alleged false im-

135

prisonment. The motion of defendant Ball was sustained for a separate trial of the issues under count one on the assigned ground that plaintiff asserted no claim against him under count two. The separate motion of the several defendants for a directed verdict at the close of plaintiff's evidence upon the trial on count one of the petition were sustained and, under the direction of the court, a verdict in favor of the defendants on count one was returned. Plaintiff prosecutes this appeal from the judgment on count one, contending, principally, error was committed in directing the verdict for defendants and in excluding certain testimony on behalf of plaintiff.

Count two of plaintiff's petition remains undisposed of. The rulings have been that in like circumstances a judgment must dispose of all the parties and all the issues in the cause to be final and appealable, the right of appeal being statutory.[1] However, our Civil Code of 1943 permits of the separate trial of claims, counterclaims, separate issues et cetera (Laws 1943, pp. 353-397, §§ 97(b), 16(b), 17(a), 79, 103; Mo. R. S. A., 1939, §§ 847.97(b), 847.16(b), 847.17(a), 847.79, 847.103), and requires: "The judgment [837] shall be entered as of the day of the verdict" (Id., § 116). Proceeding under § 10(b) of said Code, supra, the supreme court promulgated Rule. 3.29 which provides, in part, that the judgment entered upon the verdict returned on the separate trial of any claim et cetera constitutes a final judgment for the purposes of an appeal within § 126 of Laws 1943, supra; and to this extent removed the confusion arising under the new Code and modified our former practice respecting the finality of a judgment for the purposes of an appeal. Consult Carr, Missouri Civil Practice, § 860. Plaintiff's appeal is thereunder.

We need not detail plaintiff's petition, as amended. Plaintiff contends his evidence made a submissible issue on each of the six constitutive elements of a malicious prosecution action, to wit: "(1) The commencement or prosecution of the proceeding against him or her; (2) its legal causation by the present defendant; (3) its termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage to plaintiff by reason thereof." Higgins v. Knickmeyer-Fleer R. & Inv. Co., 335 Mo. 1010, 1025(2), 74 S. W. 2d 805, 812[1]; Kvasnicka v. Montgomery Ward & Co., 350 Mo. 360, 166 S. W. 2d 503, 505.

[1]State ex rel. v. Terte, 357 Mo. 229, 207 S. W. 2d 487, 489[1, 2]; Severs v. Williamson (Mo. App.), 198 S. W. 2d 368, 370[3], citing cases; Courtney v. Blackwell, 150 Mo. 245, 272(a), 51 S. W. 668, 675(a); Nokes v. Nokes (Mo. App.), 8 S. W. 2d 879, 880[6]; Liepman v. Rothschild, 216 Mo. App. 251, 262 S. W. 685, 686[3]; Laws 1943, p. 390, § 126, Mo. R. S. A., 1939, § 847.126, supplanting repealed § 1184, R. S. 1939; and see § 1243, R. S. 1939, Mo. R. S. A., not repealed by the new Code, and repealed § 1102, R. S. 1939. Mo. R. S. A. (Laws 1943, p. 353). Consult Houts, Missouri Pleading and Practice, §§ 563, 325.

Defendants contend, among other things, that plaintiff's evidence, the only evidence adduced, did not carry the burden of a submissible case on the legal causation of the prosecution by defendants and also on the absence of probable cause for such proceeding.

On February, 4, 1948, B. C. Tomlinson, prosecuting attorney of St. Francois county, Missouri, executed and filed his complaint charging that plaintiff and Walter N. Grant did, in September, 1947, feloniously steal 1500 pounds of babbitt metal of the value of $1,275, the personal property of St. Joseph Lead Company. Warrants were issued for the arrest of plaintiff and Grant, and Sheriff Heck of St. Francois county requested the police of the City of St. Louis to apprehend them.

About 9:00 p. m. on February 4, 1948, plaintiff was informed the police were looking for him and his friend Grant. He went to Grant's house and they "called" the St. Louis police, who came for them. On February 5, Sheriff Heck executed the warrants and took plaintiff and Grant to Farmington.

Plaintiff testified that on February 6, State Trooper Tucker and defendants Ball and Smith were at the jail, and thereafter he and Grant were taken to the courthouse and, in the presence of his attorney, plaintiff was questioned by Tucker and Smith about a truck and informed he was charged with stealing 1500 pounds of babbitt metal, worth about $1,200. While at the Sheriff's office, someone measured plaintiff's feet; he thinks it was Ball.

Plaintiff was returned to the jail and in less than an hour was taken out of the main cell block by one Crickett and Ball, Ball having the keys on that occasion, and put in a cell at the back of the jail. Plaintiff did not know if Crickett were an officer.

Plaintiff testified that Ball saw him about every day and would say "It looks bad for you today"; "We have got another link of evidence in the chain to convict you"; "All your attorney wants is your money"; "If you will plead guilty, I will get you off with a two year parole. You can go in the Army and forget about it, and if you don't I'm going to prosecute you to the fullest extent"; that he knew enough to hang plaintiff; that while talking about his detective work, and in answer to Grant's: "Hell, you can't detect anything"; Ball said: "I got you two guys in jail, didn't I?"; that he, plaintiff, had never stolen anything from the St. Joseph Lead Company, and the only occasion he had for being in St. Francois county was to pass through; and that he told Ball he had nothing to do with the stolen metal.

On February 14, 1948, plaintiff was taken out of jail to attend the preliminary hearing. Among the witnesses endorsed on the complaint were Forrest Chappell and William Gilbert, residents of St. Louis. Subpoenaes issued for their attendance at the preliminary hearing were returned "not found." The prosecuting attorney ap-

plied for a continuance of the preliminary hearing; making oath that said Chappell and [338] Gilbert would testify that plaintiff and Grant entered upon the property of the St. Joseph Lead Company and stole 1500 pounds of babbitt metal; "that said facts cannot be proved by other witnesses"; that the State of Missouri could not proceed with the preliminary hearing "without the testimony of these two witnesses who will testify to material facts surrounding the commission of this crime; that the State of Missouri is unable to prove such facts by any other witness" et cetera. The preliminary hearing was continued to February 18, 1948.

On February 17, 1948, an indictment was returned into court charging plaintiff and Grant with the same offense charged in the complaint of the prosecuting attorney. The names of the witnesses endorsed on the indictment were: Trooper C. W. Tucker, Byron Ball, A. G. White, Charles Hillman, R. L. Ketcherside, Forrest Chappell, William Gilbert, Harold L. Mesey, and F. O. Buxton. With the exception of the names of Mesey and Buxton, which were added to the indictment, the names are the same as appeared on the original complaint.

On February 18, 1948, the prosecuting attorney dismissed his complaint before the magistrate.

Plaintiff was released on bond after nineteen days in jail.

On March 5, 1948, Walter N. Grant's application for a separate trial was sustained.

The case against plaintiff was continued several times.

Among plaintiff's exhibits was an application by the prosecuting attorney for a writ of habeas corpus ad testificandum to secure the attendance of witness Mesey at plaintiff's trial set for December 6, 1948, Mesey being then confined in the Algoa Reformatory, alleging that Harper had admitted to Mesey he had committed the theft with which he was charged, and that Mesey would so testify.

On February 4, 1949, the prosecuting attorney, on his sole responsibility, nolle prosequied the charge against plaintiff.

Plaintiff testified that, on an occasion when Grant, his nephew Forrest Chappell, and he were in a tavern, Chappell introduced him to Harold Mesey; that Chappell and Mesey told him at that time they were going to Herculaneum to try to steal some lead from the St. Joseph Lead Company; that his brother Russell and Grant told him they also had gone to see if they could steal some lead from the St. Joseph Lead Company; that he visited Chappell and Mesey several times while they were in jail at Hillsboro on the charge of stealing lead from said corporation.

Plaintiff's witness Roberts testified that while confined in the jail, he cut plaintiff's hair at the suggestion of Ball, and an hour or so afterwards he had a conversation with Ball in which Ball said: "We haven't got anything on them," and that Ball had a listening device

by the back door over the two back cells. Plaintiff testified the hair-cutting occurred after he was indicted.

Other facts will be developed in connection with the discussion of specific points.

"The charge of malicious prosecution is no favorite of the law and when made the elements necessary to sustain it must be strictly and clearly proven." Higgins v. Knickmeyer-Fleer R. & Inv. Co., 335 Mo. 1010, 74 S. W. 2d 805, 814. This burden rests upon the plaintiff. The Higgins case, supra; Knost v. Terminal Rd. Ass'n. (Mo. App.), 222 S. W. 2d 593, 595[2]. See Kvasnicka v. Montgomery Ward & Co., 350 Mo. 360, 166 S. W. 2d 503, 509[3-6]; Bellington v. Clevenger (Mo. App.), 228 S. W. 2d 817, 818[1, 2].

The only event defendant Smith participated in was his appearance at the jail and at the courthouse when plaintiff was questioned in the presence of plaintiff's attorney on February 6, 1948; and plaintiff did not recall whether it was Trooper Tucker or Smith who questioned him. This, of course, is wholly insufficient to make a submissible case against Smith.

The evidence did not make a submissible case against the St. Joseph Lead Company. The evidence involving this defendant was limited to a stipulation that during the months of January and February, 1948, Smith was "chief of plant [839] guards" and Ball was a "plant guard" of said Company.

An employer is liable for a malicious prosecution instigated by an employee acting within the scope of his employment or if the prosecution was previously authorized or subsequently ratified. There is no evidence that the Company authorized or subsequently ratified the prosecution of plaintiff.

Neither Ball nor Smith was the Company's general agent. They were plant guards, employed to guard and protect the Company's property. We may not imply an authority upon a plant guard to procure the institution of a prosecution by a prosecuting attorney or a grand jury. Evidence is required to thus extend his authority, and it may not rest in judicial notice. See Farber v. Missouri Pac. Ry. Co., 116 Mo. 81, 93, 94, 22 S. W. 631, 633(2); Milton v. Missouri Pac. Ry. Co., 193 Mo. 46, 91 S. W. 949; Sacks v. St. Louis & S. F. Rd. Co. (Mo.), 192 S. W. 418.

The larceny, committed in September, 1947, was a thing of the past when the acts complained of by plaintiff occurred in February, 1948. Ball and Smith were not then attempting to protect the stolen metal against theft or its recapture from the thief. Under the instant record, the actions of all concerned could have no effect other than the punishment of the offender, and the presumption is that those participating acted in response to a duty as a citizen to punish the offender for the wrong to the State. The Sacks case, supra, quotes and applies Allen v. London & S. W. R. Co., L. R. 6 Q. B. 65, 68,

stating: ''There is a marked distinction between an act done for the purpose of protecting the property by preventing a felony or of recovering it back, and an act done for the purpose of punishing the offender for that which has already been done. There is no implied authority in a person having the custody of property to take such steps as he thinks fit to punish a person who he supposes has done something with reference to the property which he has not done. The act of punishing the offender is not anything done with reference to the property; it is done merely for the purpose of vindicating justice.'' Consult also 34 Am. Jur. 758, § 89; 54 C. J. S. 1031, § 64; 1 Restatement, Agency, §§ 253, 246; Nancy v. Gall, 187 Md. 656, 50 A. 2d 120, 126 [9, 10], 51 A. 2d 535; Annotations, 88 Am. St. Rep. 793; 77 A. L. R. 929d; 35 A. L. R. 654d.

■ B. C. Tomlinson, the prosecuting attorney, was plaintiff's witness and testified that Trooper Tucker and defendant Ball came to his office and narrated facts they had gleaned from an investigation they made and ''I signed an affidavit charging Mr. Harper and Mr. Grant with grand larceny''; that both Tucker and Ball, if he remembered correctly, gave him information; that he made up his own mind to file the complaint and filed it on his own responsibility and not on the request of any person: ''Q. Did you ask Mr. Ball if he would make an affidavit of those charges? A. I did not. Q. Did he ask you to prepare it, Byron Ball? A. He did not.'' It is not established what Tucker said or what Ball said or that either wrongfully stated or concealed any fact. Neither requested that a complaint be filed. There was no evidence contradicting plaintiff's witness Tomlinson and plaintiff is bound by his testimony. Klotsch v. P. F. Collier & Son Corp., 349 Mo. 40; 159 S. W. 2d 589, 594[6]; Hoock v. S. S. Kresge Co. (Mo.), 230 S. W. 2d 758, 760[4], sustaining (Mo. App.), 222 S. W. 2d 568, 570[2-4]. If any mistake was made in filing the complaint of February 4 it was the mistake of the prosecuting attorney under plaintiff's evidence and not that of Ball, who, so far as disclosed, did not misstate or conceal any fact. Bellington v. Clevenger (Mo. App.), 228 S. W. 2d 817, 821[4, 5]; Richardson v. Empire Trs. Co., 230 Mo. App. 580, 94 S. W. 2d 966, 971[4]; Madden v. Covington (Mo. App.), 86 S. W. 2d 190, 193[3]; Clark v. Thompson, 160 Mo. 461, 465(I), 61 S. W. 194(1); Hoock v. S. S. Kresge Co., supra; 54 C. J. S. 969, § 17; 34 Am. Jur. 714, §§ 23, 72.

■ The return of an indictment by a grand jury is prima facie evidence of probable cause in an action for malicious prosecution; [840] and to prevail plaintiff must rebut, briefly stated, the presumption by proof that the indictment was obtained by false or fraudulent testimony or by other improper means, or that defendant procured the indictment believing plaintiff to be innocent. Kvasnicka v. Montgomery Ward & Co., 350 Mo. 360, 166 S. W. 2d 503,

505[2], 515[13]; Wilkinson v. McGhee, 265 Mo. 574, 178 S. W. 471, 474; Sharpe v. Johnston, 76 Mo. 660, 670.

No inference of want of probable cause arises from the dismissal of the complaint in the magistrate court or the indictment in the circuit court without a trial upon the merits. Higgins v. Knickmeyer-Fleer R. & Inv. Co., 355 Mo. 1010, 1026, 74 S. W. 2d 805, 813[5]; Madden v. Covington (Mo. App.), 86 S. W. 2d 190, 192[2]; Knost v. Terminal Rd. Ass'n (Mo. App.), 222 S. W. 2d 593, 596[5], 598. We have considered the facts that plaintiff secured an acquittal and testifies he is innocent do not rebut the prima facie case of probable cause he establishes by proof of his indictment and make a submissible issue on want of probable cause. Kvasnicka v. Montgomery Ward & Co., 350 Mo. 360, 166 S. W. 2d 503, 504, 508, 514[11, 15]. See Stubbs v. Mulholland, 168 Mo. 47, 89(7), 67 S. W. 650, 663(7).

Plaintiff was indicted on February 17, 1948. The prosecuting attorney testified he talked to Mesey on that date and to most all of the witnesses. Plaintiff, in his brief, mentions that evidence connecting him with the crime would come from Chappell, Gilbert, and Mesey. It was stated in the application for a continuance that Chappell and Gilbert would testify plaintiff had stolen the metal, and in the petition for habeas corpus ad testificandum that Mesey would testify plaintiff admitted the theft to him. Chappell, Gilbert, and Mesey were also charged with the theft of metal from the corporate defendant. Plaintiff also admits that subpoenacs were issued for Chappell and Gilbert to testify before the grand jury. Mesey was also subpoenaed. All three names, together with six others, including Ball, were endorsed as witnesses on the indictment. Thus, so far as disclosed by the record, plaintiff's implication in the crime could be established only by the testimony of Mesey, Chappell, and Gilbert. There is no evidence indicating what the other six witnesses, including Ball, could or did testify to before the grand jury. The permissible inference is that the indictment of plaintiff, distinguished from proof that the babbitt metal had been stolen by someone, a fact not controverted of record, was brought about by the testimony of Mesey, Chappell, and Gilbert.

Roberts' testimony that Ball said, after the return of the indictment, they had nothing on plaintiff, and plaintiff's statements that he had never been in St. Francois county; that he did not commit the theft; that he did not tell Mesey he was guilty, and other statements attributed to Ball by plaintiff do not establish that Ball gave false testimony before or fraudulently concealed facts from the grand jury. We do not agree with plaintiff's statement that it is to be inferred from the remarks attributed to Ball by plaintiff that Ball made similar threats and promises to Mesey, Chappell, and Gilbert while they were in jail to induce them to give false testimony before

the grand jury. If Mesey, Chappell, and Gilbert gave false testimony before the grand jury, there is nothing in this record "strictly and clearly" connecting Ball with such testimony on the part of said witnesses. A' difficulty with plaintiff's argument is that there is no evidence disclosing what Ball said to the prosecuting attorney, to the grand jury, or to Mesey, Chappell, or Gilbert, if anything.

Plaintiff has failed on two essential elements of his case. He has failed to produce substantive evidence that Ball brought about his indictment, and has not made a submissible issue on want of probable cause, having failed to adduce sufficient evidence to rebut the prima facie case of probable cause he established when he proved he had been indicted.

Error is alleged in compelling plaintiff (1) to redraft his petition into two counts and (2) requiring a separate trial on count one. We find no order on plaintiff to redraft his petition in two counts. The court sustained motions to strike certain [841] portions of plaintiff's original petition and plaintiff thereafter filed an amended petition in two counts. Plaintiff waived the error, if any, by filing his amended petition and proceeding to trial. Bryan v. Louisville & N. R. Co., 292 Mo. 535, 238 S. W. 484; Williams v. Chicago, S. F. & C. Ry. Co., 112 Mo. 463, 485, 486, 20 S. W. 631, 637(1). The complaint respecting a separate trial is not preserved in plaintiff's motion for new trial. It is without merit.

Plaintiff testified that about the middle of January, 1948, two St. Louis policemen, defendant Smith and a deputy sheriff took him into custody in St. Louis. The court sustained defendant's objection to a question calling for his conversation with Smith at that time. The court also sustained an objection to a question calling for a conversation between plaintiff and defendant Ball "with reference to this indictment." Error is alleged. There is no offer of proof of record in either instance and reversible error is not established, irrespective of other possible grounds for disallowing the points. Woodard v. Stowell (Mo.), 222 S. W. 815, 821[8], citing cases; City of St. Louis v. Pope (Mo.), 121 S. W. 2d 861, 862[2].

Complaint is made of the court's refusal to permit the prosecuting attorney to state whether defendant Ball did or did not testify before the grand jury. The issue is without merit for several reasons. Plaintiff introduced in evidence, without objection, the subpoena requiring Ball's attendance upon the grand jury and the sheriff's return showing due service, as well as the indictment with Ball's name endorsed thereon as a witness. This permitted an inference that Ball appeared and testified before the grand jury. Defendants' counsel stated of record the fact that a witness was subpoenaed constituted reasonable ground for thinking he appeared before the grand jury.

We have considered Ball appeared and testified before the grand jury in ruling this review.

We conclude reversible error was not committed under the record made. The judgment is affirmed. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.