Brian PINKSTAFF, Statutory Trustee for Pinkstaff–Luetkemeyer, Inc., d/b/a Barter Systems of Kansas City, Inc., Appellant,

v.

Robert M. HILL, Respondent/Cross Appellant,

Roger M. DRISKILL, Respondent/Cross Appellant,

Mercantile Bank of Kansas City, Respondent.

No. WD 44375.

Missouri Court of Appeals, Western District.

March 24, 1992.

James S. Formby, Grain Valley, Michael William Walker, Kansas City, for Brian Pinkstaff, et al., appellant/respondent.

Floyd R. Finch, Jr., Kansas City, for Robert Hill, et al., appellant.

Stephen S. Brown, Kansas City, for Roger Driskill, appellant.

Edward M. Dolson, Kansas City, for Mercantile Bank of Kansas City, respondent.

Before LOWENSTEIN, C.J., and KENNEDY and ULRICH, JJ.

LOWENSTEIN, Chief Judge.

This action for wrongful garnishment presents a complicated set of facts, due in part to an extensive history dating back to 1980. To aid the reader the facts will first be presented in an unorthodox and summary manner. Three entities are initially involved, Barter Systems, Inc. of Oklahoma, Pinkstaff–Luetkemeyer, Inc. (plaintiff-appellant), and Barter Systems of Kansas City, Inc. While it is unclear, Pinkstaff–Luetkemeyer was apparently doing business as Barter Systems, Inc. of Kansas City, and was also perhaps a franchisee of Barter Systems of Oklahoma.

In 1980, a checking account was opened under the name "Barter Systems, Inc.," at Mercantile Bank in Kansas City. In 1982, attorney Driskill, as part of a firm with attorney Hill (defendant's cross-appellants), did legal work for Barter Systems, Inc. of Oklahoma. Driskill obtained judgment ($2,982.72) in the latter part of that year against Oklahoma Barter for legal services rendered. In October, 1983, the Hill–Driskill firm served a garnishment summons on Mercantile Bank (Bank), the Bank paying funds from the "Barter Systems, Inc." checking account into court. Pinkstaff–Luetkemeyer, Inc., d/b/a Barter Systems of Kansas City, then intervened, alleging ownership of the account. After a convoluted trial in Ray County, Pinkstaff–Luetkemeyer was finally determined to be the owner of the account. This court quashed the garnishment and gave Pinkstaff–Luetkemeyer a judgment including interest and costs, *Hill, Lehnen & Driskill v. Barter Systems, Inc.*, 707 S.W.2d 484, 487 (Mo. App.1986).

In June 1987, Pinkstaff–Luetkemeyer brought this action for wrongful garnishment against the lawyer defendants Hill and Driskill, and against the respondent Bank. In September of the same year, Pinkstaff–Luetkemeyer's statutory trustee, Brian Pinkstaff (Pinkstaff) was substituted as plaintiff after discovery revealed that the corporate charter had been forfeited in October, 1985. Hill and Driskill repaid the $3,308.02 wrongfully garnished from the "Barter Systems, Inc." account, plus statutory interest, prior to this trial.

The wrongful garnishment counts against the Bank were dismissed, giving rise to Point I of Pinkstaff's appeal, while a jury, on the sole submission for wrongful garnishment against Driskill and Hill, gave actual damages to Pinkstaff of $4,027.50 (attorney fees expended in the original garnishment ($2600) and litigation "expenses" ($1,427.50)), and punitive damages against Hill and Driskill of $500.

Additional facts will be supplied in the multitude of points raised by both sides, but the reader is here cautioned to always keep in mind: Pinkstaff as plaintiff prosecutes this suit on behalf of the defunct Pinkstaff–Luetkemeyer which was paid back all the money netted by the garnishment by the now defunct Hill Lehnen (discussed *infra*) & Driskill firm. In this suit for wrongful garnishment, submitted by agreement on instructions patterned for malicious prosecution (MAI 23.07), the plaintiff prayed for and recovered all the

attorney fees and expenses it expended in its intervention back in the original garnishment action. The plaintiff-appellant also received $500 in punitive damages. The plaintiff's causes against the bank which had succumbed to the Hill–Driskill garnishment were dismissed by the court prior to trial. Everyone but the Bank appeals, the primary appellant is Pinkstaff and his points are first considered.

## I. PINKSTAFF'S POINTS ON APPEAL

### A. Bank

Pinkstaff contends that the trial court erred in dismissing Counts VI, VII, and VIII against the defendant-respondent Mercantile Bank because the Bank had a duty, upon Pinkstaff–Luetkemeyer's request, to present all legal defenses to the garnishment proceedings. Again, the checking account in question was opened in the name of "Barter Systems, Inc." on October 2, 1980, without corporate resolution, but with Mr. Pinkstaff and a Mr. Luetkemeyer as signatories. On September 2, 1983, a Summons of Garnishment was directed to the Bank and interrogatories requested information regarding the account in the name of Barter Systems, Inc. The Bank sent a notification letter to the address on the account on September 7, 1983. On September 19, 1983, the attorney for Pinkstaff–Luetkemeyer Enterprises, Inc. wrote to the Bank advising it that "the garnishment of said account is wrongful" and requested the Bank, "on behalf of Pinkstaff, Luetkemeyer, Interprises, (sic) Inc.," to resist payment of the monies from that account. The Bank, through counsel, responded that since the summons named the garnishment defendant as Barter Systems, Inc. and the account was under "Barter Systems, Inc.," it had no alternative except to answer the summons. The Bank further advised counsel for Pinkstaff–Luetkemeyer Enterprises, Inc. that if the account was not subject to garnishment or belonged to someone other than the named defendant a motion to intervene could be filed in the garnishment action. On September 27, 1983, the Bank was ordered to deliver the sum of $3,275.02 to the circuit clerk. On October 14, 1983, Pinkstaff–Luetkemeyer filed a motion for leave to intervene in the garnishment proceedings. The circuit court ultimately found that it lacked subject matter jurisdiction to rule on the motion for leave to intervene because the motion was not timely filed. As stated earlier, this court found intervention timely and then ordered the money repaid to Pinkstaff–Luetkemeyer, *Hill, Lehnen & Driskill* at 485.

■ The present plaintiff, Pinkstaff, acknowledges that the relationship of a general depositor to its bank is that of creditor-debtor, which does not arise to a fiduciary relationship. *See Leuzinger v. Merrill Lynch, Pierce, Fenner and Smith,* 396 S.W.2d 570, 578 (Mo. banc 1965). However, Pinkstaff argues that the Bank's duty to assert a jurisdictional defense in a garnishment proceeding somehow creates a principal-agent relationship and, therefore, a fiduciary duty to act in good faith on a depositor's behalf. A garnishee does have an obligation in a garnishment proceeding to question the jurisdiction of the court rendering the principal judgment against the depositor, *O'Dell Plumbing, Heating & Cooling, Inc. v. Clayton Greens Nursing Center, Inc.,* 676 S.W.2d 528, 532 (Mo. App.1984). However, Pinkstaff did not assert any basis for challenging the jurisdiction of the court rendering the judgment and does not now assert that the principal judgment was void. Furthermore, the fact that funds are deposited in a person's name is prima facie evidence that the funds belong to that person, *Baden Bank of St. Louis v. Trapp,* 180 S.W.2d 755, 759 (Mo. App.1944). The Bank had no knowledge, other than a belated assertion by Pinkstaff–Luetkemeyer Enterprises, Inc., that the funds belonged to anyone other than "Barter Systems, Inc." Pinkstaff–Luetkemeyer was given adequate notice by the Bank of the garnishment proceedings to allow intervention to assert its claim to the garnished account.

The question decided in the Bank's favor is that the Bank did not have an obligation to assert in the garnishment proceedings that the funds in the account were actually

owned by a third party. To hold otherwise would place an enormous burden on a bank and place it in the unenviable position of having to assert defenses raised by third parties who claim the funds held in the name of another. Pinkstaff's point against the Bank is denied.

## B. Lawyers

■ Pinkstaff also raises error in the verdict involving Hill and Driskill. Pinkstaff complains the verdict director did not follow the language of *Proctor v. Stevens Employment Services, Inc.*, 712 S.W.2d 684, 687 (Mo. banc 1986). The pertinent portion of the instruction here reads:

Your verdict must be for the plaintiff if you believe:

First, defendants initiated and continued to maintain a garnishment against plaintiff maliciously *and* without reasonable grounds, and

Second, plaintiff was thereby damaged.

Simply stated the underscored "and" should have read "or." Aside from the question of standing to complain of prejudicial error where the plaintiff got the total sum of actual damages supported by its evidence, the plaintiff has additional insurmountable obstacles. The legal file shows the verdict director was "submitted by defendants and plaintiffs subject to defendant objection on record." A party is not entitled to complain on appeal as to an instruction given on its behalf or at its request. *Bonnot v. Jefferson City*, 791 S.W.2d 766, 771 (Mo.App.1990); *Baumgartner v. Bi–State Dev. Agency*, 811 S.W.2d 63, 65 (Mo.App.1991). Further, Rule 70.03 which concerns the timeliness of objections to instructions does not save a tendering party. Even under *Fowler v. Park Corp.*, 673 S.W.2d 749, 756 (Mo. banc 1984), where as here the matter was first raised in the new trial motion, review under the rule is not entitled to a reversal "unless prejudice is established," *see also E.A.U., Inc. v. R. Webbe Corp.*, 794 S.W.2d 679, 688–89 (Mo.App.1990). The jury here asked for a clarification of this instruction, but the court refused to respond, and no objection was raised by the plaintiff. In

any event, where the full amount of damages requested was in the verdict, the prejudice required by *Fowler* under the rule does not exist.

## C. Lawyers

■ The next point, considered *ex gratia* because of being in violation of Rule 84.-04(d) and (h), alludes to numerous errors from numerous actions of the trial court in limiting evidence as to actual damages of Pinkstaff–Luetkemeyer, Inc. Within the three pages of his brief, Pinkstaff's point states that the trial judge did not allow in evidence as to "the damage to the reputation" of the plaintiff, loss of profits, and, "out of pocket expenses in travel to court hearings over the past 7 years." These complaints stem from evidentiary rulings, in limine motions, and other decisions without transcript references. Suffice it to say that the trial court committed no error and the allegations are without merit. None of the adverse evidentiary rulings that can be identified were followed up by offers of proof, and with none of the exceptions to this rule being appropriate, the court declines to consider these allegations. *Schmidt v. Keane*, 810 S.W.2d 701, 703 (Mo.App.1991).

## D. Lawyers

The next point arose out of the defendants' closing argument. The original garnishment action took place in September–October 1983, while the Hill–Driskill partnership was terminated on October 31, 1983. Hill's attorney, in arguing that Hill was not involved in the garnishment stated:

And remember what the Judge instructed you that you are going to have to find Bob Hill liable in this case. That he acted maliciously without just cause or excuse and that Bob Hill did not have reasonable grounds which is defined as what an ordinarily careful and prudent person, after having made a reasonable inquiry would have believed. Well, ladies and gentlemen, ask Mr. Formby in his closing argument where is the evidence that Bob Hill did not have reasonable grounds? Where is the evidence that Bob Hill acted maliciously?

And the verdict form that you are going to be asked for is a verdict against Robert Hill and Bob, excuse me, Robert Hill and Roger Driskill. So you have got to find that Bob Hill acted maliciously in order to return a verdict for defendants. (sic)

Pinkstaff's attorney then objected on the basis that under partnership law, the jury need only find one partner had so acted in order to return a plaintiff's verdict.

 Pinkstaff contends the overruling of his objection was erroneous under partnership law, Chapter 358 RSMo 1986, and that the ruling "tended to mislead and confuse the jury." The trial court's broad discretion over closing argument which is not lightly disturbed on appeal, *Midwest Materials Co. v. Village Development Co.*, 806 S.W.2d 477, 492 (Mo.App.1991), will not now be disturbed. There is no evidence of prejudice, nor, under Rule 84.13(b), any evidence that the error materially affected the merits of the case.

### E. Lawyers

 Hill and Driskill's former partner Lehnen, though sued, was not present at trial because he had this particular claim discharged in bankruptcy. The defendants asked for and received permission to explain this to the jury. Over the plaintiff's objection as to this information being irrelevant and tending to lower the jury verdict for punitive damages, see II C *infra*, the court told the jury that although Lehnen's name had been mentioned in the case, he had been discharged in bankruptcy. No abuse of discretion is shown, so the point is denied.

## II. THE CROSS-APPEALS OF HILL AND DRISKILL

The defendants raise several points in their cross appeal: 1) their motion for a directed verdict should have been sustained since Pinkstaff–Luetkemeyer was not the real party in interest and lacked standing following its transfer of assets and sale of the franchise in 1984 to Kansas Barter Network, Inc. of Wichita; 2) there was insufficient evidence to submit the underlying action for wrongful garnishment; 3) there was no evidence to support a punitive damage instruction against either of them; and 4) instructional error.

### A.

 At first blush, the point concerning standing seems to have merit. Hill and Driskill argued strenuously before the trial judge that Pinkstaff–Luetkemeyer, whether defunct or not at trial, had never incorporated and never registered under the Fictitious Name Act. Further, on April 26, 1984, Pinkstaff–Luetkemeyer sold by contract all of its assets and its franchise to Kansas Barter Systems Network, Inc. and was therefore not the real party to bring this action. The sales contract stated Kansas law was to apply. The point on appeal as to standing and the underlying question of assignability of tort claims in our sister state is disposed of by: 1) *Commodore v. Armour & Company*, 201 Kan. 412, 441 P.2d 815, 820 (1968), "[w]e are cognizant that no particular form is necessary to effect a valid assignment in Kansas (*Hall v. Kansas City Terra Cotta Co.*, 97 Kan. 103, 154 P. 210, L.R.A.1916D, 361) and that assignments of accounts, sums due or to become due, including wages or any chose in action, except one arising in tort, are recognized and enforced," and; 2) *Heinson v. Porter*, 244 Kan. 667, 772 P.2d 778, 785, (1989) overruled on other grounds by *Glenn v. Fleming*, 247 Kan. 296, 799 P.2d 79 (1990); "[w]e agree that tort claims remain unassignable in Kansas. There are sound continuing policy reasons for this commonlaw rule. Tort claims are personal in nature and third parties should not be permitted to buy claims for personal injuries and losses." This point is denied.

### B.

 Examination of the submissibility of the underlying action for malicious prosecution is on the basis of viewing the evidence most favorable to the plaintiff. The establishment of want of "probable cause," or here "reasonable grounds" involves proving a negative, so only slight proof was necessary, *Haswell v. Liberty*

*Mutual Ins. Co.,* 557 S.W.2d 628, 633 (Mo. banc 1977), overruled on other grounds by *Sanders v. Daniel International Corp.,* 682 S.W.2d 803 (Mo. banc 1984). The Hill–Driskill partnership obtained a judgment against Barter Systems of Oklahoma, Inc. It garnished the account of "Barter Systems, Inc." Letters and calls from Brian Pinkstaff (who along with Mr. Luetkemeyer was authorized to draw on the account) and from an attorney, explained the account really belonged to Pinkstaff–Luetkemeyer, Inc., a franchisee of Barter Systems of Oklahoma, or, at least belonged to an entity other than that named as the account holder. After intervention in the garnishment proceedings, this court, in *Hill v. Barter,* 707 S.W.2d at 487, quashed the garnishment, found the account belonged to Pinkstaff–Luetkemeyer, d/b/a Barter Systems of Kansas City and rendered judgment against Hill & Driskill. Based on this evidence the plaintiff made a jury case. *Young v. Jack Borings, Inc.,* 540 S.W.2d 887, 895 (Mo.App.1976).

■ The case was submitted on instructions based on malicious prosecution which require these six elements: (1) the commencement of a prosecution against the plaintiff; (2) instigation by the defendant; (3) the termination of the proceedings in favor of the plaintiff; (4) the want of probable cause for the prosecution; (5) the defendant's conduct was actuated by malice; and (6) the plaintiff was damaged; *see Burnett v. Griffith,* 769 S.W.2d 780, 784 fn. 1 (Mo. banc 1989); *Haswell v. Liberty Mutual, supra,* 557 S.W.2d at 633 fn. 4. The defendants presented evidence of extensive investigation by Driskill into the complexities of numerous Barter entities and complicated asset ownership. This evidence does not affect submissibility, as only the plaintiff's evidence is considered in such a question. Admittedly there were numerous names and addresses, and shoddy compliance with registration laws by the plethora of entities using the name "Barter Systems." Although a close call, particularly on elements (4) and (5) above, a submissible case was made.

### C.

■ Concerning punitive damages, the court finds the evidence insufficient to satisfy instructional language requiring either Hill or Driskill's conduct to have been "outrageous because of ... evil motive or reckless indifference to the rights of others." A "higher degree of malice should be required to award punitive damages than to find liability," *Proctor v. Stevens supra,* 712 S.W.2d at 687. The original garnishment action to be susceptible to punitive damages, would have to be continued "primarily for a purpose other than securing the proper adjudication of the claim on which they are based." *Id.*

In simple terms, the ruling here is that although Hill and Driskill may have erred in pursuing this bank account after warning of other ownership, their conduct does not call for punitive payment. They hired an investigator and tried to determine who was who in the labyrinth of Barter corporations and entities, most of which were unregistered and impossible to find. The bank account they found in the name of "Barter Systems, Inc." appeared to be owned by the will-o-the-wisp organization against which they had their judgment. The account ended up belonging to an entity that never registered to do business in this state as Barter Systems, Inc., and in fact, Pinkstaff–Luetkemeyer had been warned several times by their franchisor, Barter Systems of Oklahoma, not to use the "Barter Systems" name and so create confusion. This portion of the judgment is reversed. Hopefully this will be the end to the suit of a partnership (Pinkstaff–Luetkemeyer) which maintained a checking account called Barter Systems, Inc. Left unanswered and still to ponder is the question of why sales for money and maintenance of checking accounts were made by an organization promoting barter and elimination of currency transfer.

The remaining point on the defendants' cross appeal, pertaining to instructional error is denied; as mentioned earlier, both sides agreed to the underlying verdict director.

The judgment as to actual damages is affirmed. The judgment for $500 punitive damages is reversed. The judgment as to the bank is affirmed. Two-thirds of the costs are assessed against Pinkstaff, the remainder to Hill and Driskill.